SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Attorney for Plaintiff
[additional counsel identified below]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CY R. Brown, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br>vs.<br><br>UBER TECHNOLOGIES, INC.,<br><br>            Defendant. | Case No.: 2:15-CV-00880-DDP (AGRx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Cal. Bus. & Prof. Code §§ 17200, et seq.<br>2. Breach of Contract<br>3. Breach of Good Faith and Fair Dealing<br>4. Unjust Enrichment and Restitution<br>5. Accounting<br>6. Conversion<br>7. Fraudulent Concealment<br>8. Constructive Trust<br>9. Cal. Civ. Code §§ 1750, *et. seq.*<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Uber Technologies, Inc. ("Uber") operates a "ride sharing" service that transports customers throughout the Los Angeles area for a fee. Uber passengers summon Uber vehicles using a cell phone "app," and pay the fare through the same app.

2. The California Public Utilities Commission ("CPUC") categorizes Uber as a "transportation network company," not a licensed taxi service.

3. Taxis are authorized to do business at Los Angeles International Airport ("LAX"). Taxis collectively pay LAX well over $3 million a year to operate at the airport. Uber is not authorized to do business at LAX. Uber does not pay LAX any money to operate at the airport. Nevertheless, Uber is doing business at LAX.

4. Uber vehicles transporting passengers to and from LAX charged a fare, plus an additional $4.00 fee for a so-called "LAX Airport Fee."

5. Neither the CPUC nor LAX charge Uber drivers any fee for airport pick-ups or drop-offs.

6. This class action seeks declaratory, injunctive, and monetary relief on behalf of a class of Uber passengers who paid Uber the LAX Airport Fee to Uber when no such fee existed.

## PARTIES

7. Mr. Brown resides in Phoenix, Arizona.

8. Uber is a California corporation that conducts business in Los Angeles, California.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the claims asserted herein pursuant to the California Constitution, Article VI § 10.

10. This Court has jurisdiction over the claims asserted herein under California Code of Civil Procedure § 410.10 because the alleged damages exceed the jurisdiction minimum of the Court.

11. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims herein occurred here.

## FACTS

**Uber's Download and Registration Process Obscures the Terms & Conditions Uber Imposes on Its Customers**

12. Mr. Brown downloaded the Uber app on his iPhone and created an Uber account.

13. Mr. Brown followed the registration process to create an Uber account. This process required Mr. Brown to input identifying information on a screen on his mobile device, and provide a credit card account number.

14. On touchscreen devices like the iPhone, an electronic keyboard obscures the lower half of the screen as information is inputted into each required field: email address, mobile telephone number, password, first and last name, and credit card account information.



15. As Mr. Brown provided the information in the required fields, the lower half of his screen was obscured by the electronic keyboard.

3     FIRST AMENDED COMPLAINT



16. At the conclusion of the registration process, the app displayed a screen to Mr. Brown, the bottom of which referenced a hyperlink to Uber's "Terms & Conditions and Privacy Policy."



17. At no step during the registration process were the referenced "Terms &

Conditions" displayed to Mr. Brown.

18. Nor did Uber's registration process require, either as a condition of initially using its app or its ride share service, Mr. Brown to access the "Terms & Conditions" hyperlink, read the "Terms & Conditions," or affirmatively assent to them.

19. Mr. Brown did not access the "Terms & Conditions" hyperlink, read the "Terms & Conditions," or affirmatively assent to them.

**Uber's Terms & Conditions Attempt to Abrogate Basic Legal Rights**

20. Each prospective Uber user must register and create an Uber account using the same steps and viewing the same screens as Mr. Brown.

21. Uber's inconspicuous "Terms & Conditions" contain a number of grossly one-sided provisions, which purport to contract away all possible legal obligations to its customers, including even any obligation to provide a safe vehicle, or a safe driver, while retaining its right to payment regardless of whether a ride is completed.

22. Uber's "Terms & Conditions" contain a complete disclaimer of warranties, which disavows virtually every conceivable basis upon which a reasonable user would rely in using the app and the ride share service:

> The company makes ***no representation, warranty, or guaranty*** on the reliability, timeliness, quality, suitability, availability, accuracy or completeness of the service or application. ....
>
> The service and application is provided to you ***strictly on an "as is" basis. All conditions, representations and warranties,*** whether express, implied, statutory or otherwise, including, without limitation, any implied warranty of merchantability, fitness for a particular purpose, or non-infringement of third party rights, are ***disclaimed to the maximum extent permitted by applicable law ....***
>
> You acknowledge and ***agree that the entire risk*** arising out of your use of the application and service, and any third party services or products ***remains solely with you***, to the maximum extent permitted by law.

(Emphasis added).

23. Uber's "Terms & Conditions" contain a "no refund" policy, encompassing "[a]ny fees that the Company may charge you...." This "no refund policy shall apply at all

times regardless of your decision to terminate your usage, our decision to terminate your usage, disruption caused to our Application or Service either planned, accidental or intentional, ***or any reason whatsoever.***" (Emphasis added).

24. Uber's "Terms & Conditions" contain a Liability Disclaimer, by which Uber purports to absolve itself of all liability arising out of using its app or ride share service.

25. Uber imposes upon every passenger a $1 "Safe Rides Fee." Uber expressly represents that this Safe Rides Fee "supports our continued efforts to ensure the ***safest possible platform for Uber riders*** and drivers, including an ***industry-leading background check*** process, regular motor vehicle checks, driver safety education, development of ***safety features in the app***, and insurance. For complete pricing ***transparency***, you'll see this as a separate line item on every UberX receipt." (Emphasis added).

26. Despite its express representation that it is "committed to connecting you with the safest rides on the road," Uber disclaims "***any and all any liability… in any way related to the third party transportation provider….***" (Emphasis added).

27. Although it expressly represents that it employs an "***industry-leading background check*** process,"Uber disclaims any responsibility to ***"assess the suitability, legality or ability of any [drivers.]"*** (Emphasis added).

28. Although expressly representing that it conducts "regular motor vehicle checks [and] driver safety education," Uber's "Terms & Conditions" disavow any responsibility for the rider's safety: "**You understand, therefore, that by using the application and the service, *you may be exposed to transportation that is potentially dangerous, offensive, harmful to minors, unsafe* or otherwise objectionable, and that *you use the application and the service at your own risk*.**" (Emphasis added).

**In Contrast, Uber's Surge Pricing Clearly Discloses Terms and Requires Customers to Affirmatively Agree to Those Terms**

29. In contrast to the passive "Terms & Conditions" disclosure, which does not require the customer's affirmative assent to those terms, Uber informs the customer before imposing any charges that surge pricing will be applied. Uber discloses the amount of the surge pricing surcharge, and requires the customer to affirmatively agree to that surcharge before it acknowledges that an agreement on those terms has been reached between the customer and Uber.

30. Uber's stated purpose for this multi-step process is that it wants to ensure that these contract terms are "clear and straightforward." *See* The Uber Resolution – Always A Reliable Ride!, available at http://blog.uber.com/2012/12/28/surge2012/, last visited on January 2, 2015.

31. Uber illustrates this three-step process on its website.





32. By using this "clear and straightforward" disclosure process, coupled with requiring the customer's affirmative election to accept the disclosed terms, Uber hopes to ensure that, at least with respect to its surge pricing, its customers "won't be surprised"

by the terms of its contract. *Id.*

**Facts Pertaining to Mr. Brown's Uber Transaction**

33. On October 16, 2013, Mr. Brown used the Uber app to obtain transportation to LAX.

34. Mr. Brown paid $73.00 for the trip to the airport, including the $4.00 LAX Airport Fee.

35. Uber itemized its charges as follows on the electronic invoice it sent to him via email:

UBER                                                    OCTOBER 16, 2013

$73.00                                    Thanks for choosing Uber, Cy

FARE BREAKDOWN

LAX to Downtown                                          69.00
LAX Airport Fee (?)                                       4.00

Subtotal                                                 $73.00

09:20am
100 World Way, Los Angeles International Airport, Los Angeles, CA

09:49am
Figueroa St. & Pico Blvd., Los Angeles, CA

CHARGED
Business **** 4475                                       $73.00

CAR        MILES       TRIP TIME
BLACK      16.92       00:28:55

## **CLASS ALLEGATIONS**

36. When an Uber customer purchases a ride to LAX, the customer receives an itemized electronic receipt, which includes a $4.00 charge for the "LAX Airport Fee."

37. On the receipt, next to the line for the "LAX Airport Fee," there is a "?" hyperlink.

8                                      FIRST AMENDED COMPLAINT

38. The "?" hyperlink leads to the Uber website, and contains the following explanation: "In select cities, there may be a nominal surcharge to reimburse drivers for any airport fees they are charged as part of your trip." *See What is this Charge For A Toll?*, available at: https://support.uber.com/hc/en-us/articles/201836666-What-is-this-charge-for-a-toll-., last visited on January 2, 2015.

39. Uber vehicles, which are not licensed livery services, are not currently charged a fee of any sort for picking-up or dropping-off passengers off at LAX. Moreover, Uber is currently banned from picking-up or dropping-off passengers at LAX precisely because Uber does not pay to LAX any fees to operate at the airport, and does not otherwise comply with existing rules and regulations. *See LAX Planning to Allow Uber and Lyft, While Also Deregulating Taxis*, Maddaus, Gene, LA Weekly, January 23, 2015, available at http://www.laweekly.com/news/laxplanningtoallowuberandlyftwhilealsoderegulatingtaxis5348126, last visited March 5, 2015.

40. Uber has imposed the fictitious "LAX Airport Fee" upon tens of thousands of passengers.

41. The class is composed of all individuals who, since June of 2010:

(a) paid an Uber invoice including a $4.00 charge designated as LAX Airport Fee; and

(b) LAX did not impose any fee, toll, or surcharge upon the Uber driver for the invoiced trip.

42. Based on Uber's LAX Airport ride volume, the prospective class numbers in the tens of thousands, making joinder of all members impracticable. The exact size of the proposed class and the identity of the class members are readily ascertainable from Uber's business records.

43. There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. The principal common issues with respect to the class include: whether Uber's LAX Airport Fee is unlawful, unfair, or fraudulent within the meaning of California Business and

Professions Code §17200; whether Uber breaches its contract with class members; whether the LAX Airport Fee violates Uber's requirement of good faith and fair dealing; and whether Uber's retention of amounts in excess of any actual fees paid constitutes unjust enrichment.

44. There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Uber's records, and the issues of liability are determinable entirely from the face of the operative documents.

45. Mr. Brown's class claims are typical of those of the class he seeks to represent, and he will fairly and adequately protect and represent the interests of the class. There is no conflict between the claims of Mr. Brown as class representative and the claims of the proposed class.

46. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against Uber.

47. Mr. Brown is represented by counsel competent and experienced in both consumer protection and class action litigation.

## FIRST CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)

48. Mr. Brown incorporates by reference all the foregoing paragraphs.

49. California Business and Professions Code §17200 prohibits any "unlawful ... business act or practice." Uber has violated § 17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, the following:

      a. violating the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§1750 *et seq.*; and

      b. violating California Business and Professions Code §17500 *et seq.*;

      c. violating California Civil Code §1565 *et seq.*; and

      d. violating California Civil Code §1667 *et seq.*

50. Mr. Brown reserves the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this day.

51. California Business and Professions Code §17200 prohibits any "unfair ... business act or practice." As detailed in the preceding paragraphs, Uber engages in a systematic scheme by imposing and collecting the LAX Airport Fee from unsuspecting consumers using false pretenses. Mr. Brown and class members would not have paid Uber the LAX Airport Fee otherwise. As a result, Uber engages in unfair business acts and a practice that is prohibited by §17200, *et seq.*

52. California Business and Professions Code §17200 also prohibits any "fraudulent ... business act or practice." As previously detailed, Uber's conduct was likely to deceive Mr. Brown and class members by representing that it was imposing the LAX Airport Fee to reimburse its drivers for the fee charged by LAX, when in truth, LAX imposed no such fee.

53. As a result of Uber's unlawful, unfair, and fraudulent business acts and practices Mr. Brown and the class have suffered an injury in fact and lost money.

54. Pursuant to California Business and Professions Code §17203, Mr. Brown seeks an order requiring Uber to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Uber to return the full amount of money improperly collected to Mr. Brown and the class – plus interest and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

55. Mr. Brown incorporates by reference all the foregoing paragraphs.

11        FIRST AMENDED COMPLAINT

56. Uber charged Mr. Brown and the class $4.00 for the purported LAX Airport Fee. Uber represented that this fee was imposed to reimburse drivers for any airport fees they are charged as part of trips to LAX.

57. Uber breached its contract with Mr. Brown and the class by imposing the $4.00 charge when LAX did not charge or collect any fees from Uber as part of trips to LAX.

58. As a proximate result of Uber's breaches, Mr. Brown and the class have been damaged. Uber should be required to disgorge its ill-gotten gains.

### THIRD CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing Duty)

59. Mr. Brown incorporates by reference all of the foregoing paragraphs.

60. Uber's imposition of fictitious and inflated charges violates the covenant of good faith and fair dealing contained in its contracts.

61. Uber's failure to act in good faith and deal fairly with Mr. Brown and class members is part of a pattern, or consistent with a practice of noncompliance with its contractual obligations.

62. Uber continues to act in bad faith and to breach the covenant by refusing to return overpaid amounts. As a proximate result of Uber's conduct described herein, Mr. Brown and class members have been damaged.

63. Uber would be unjustly enriched if it were permitted to retain the unlawfully charged and collected LAX Airport Fee. Uber should therefore be ordered to provide restitution to Mr. Brown and to the class of all amounts overpaid to Uber.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment and Restitution)

64. Mr. Brown incorporates by reference all of the foregoing paragraphs.

65. By charging and collecting a $4.00 fee for a so-called LAX Airport Fee, as described above, Uber has unjustly received a benefit at the expense of Mr. Brown and the class.

66. Uber would be unjustly enriched if it were permitted to retain the unlawfully charged and collected amounts. Uber should therefore be ordered to provide restitution to Mr. Brown and the class of all amounts it charged and collected for the LAX Airport Fee.

### FIFTH CAUSE OF ACTION
### (Accounting)

67. Mr. Brown incorporates by reference all of the foregoing paragraphs.

68. At various times continuing to the present, Uber has become indebted to Mr. Brown and the class members for money received. The exact amount Uber owes to Mr. Brown and the class can only be ascertained by an accounting.

69. Mr. Brown therefore requests the Court to order an accounting by Uber of all amounts it charged and collected for the LAX Airport Fee from Mr. Brown and the class, which amounts constitute ill-gotten gains. Mr. Brown requests that he and the class have judgment for all sums due, with interest thereon, as shown by such accounting.

### SIXTH CAUSE OF ACTION
### (Conversion)

70. Mr. Brown incorporates by reference all of the foregoing paragraphs.

71. Mr. Brown and class members, were, and still are, entitled to the possession of all monies paid to Uber for the fictitious LAX Airport Fee.

72. Uber has converted Mr. Brown's and class members' property to its own use. As a proximate result of Uber's conduct described herein, Mr. Brown and the class

have been damaged.

## SEVENTH CAUSE OF ACTION
### (Fraudulent Concealment)

73. Mr. Brown incorporates by reference all of the foregoing paragraphs.

74. Uber intentionally misrepresented to Mr. Brown and the class that LAX was imposing a fee for pick-ups and drop-offs.

75. Uber intentionally misrepresented that the LAX Airport Fee that Uber charged and collected from Mr. Brown and class members was imposed to reimburse its drivers for amounts paid to LAX.

76. Uber intentionally concealed from Mr. Brown and the class that LAX did not impose on Uber any fees for LAX pick-ups or drop-offs.

77. Uber misrepresented and concealed the true facts surrounding the nature and existence of the LAX Airport Fee that it charged and collected from Mr. Brown and the class.

78. As a result of Uber's wrongful conduct, Mr. Brown and the class have been damaged.

79. The wrongful acts of Uber were done with the intent to mislead and defraud; Mr. Brown and the class are entitled to exemplary damages in an amount appropriate to punish and set an example pursuant to California Civil Code §§3294 *et seq.*

## EIGTH CAUSE OF ACTION
### (Constructive Trust)

80. Mr. Brown incorporates by reference all of the foregoing paragraphs.

81. Uber has held and continues to hold property belonging to Mr. Brown and

the other class members, by which Uber has been unjustly enriched.

82. By virtue of the foregoing, in equity all such property in possession of Uber belongs to Mr. Brown and the class, to be held in trust for their respective benefits, plus interest thereon.

83. Mr. Brown and the other class members do not have an adequate remedy at law and will suffer irreparable harm unless a trust is imposed on all such sums and property.

## NINTH CAUSE OF ACTION
### (Cal. Civ. Code §§ 1750, et. seq. ("CLRA"))

84. Mr. Brown incorporates by reference all of the foregoing paragraphs.

85. The CLRA is a legislative embodiment of a desire to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

86. Mr. Brown and the class are "consumers" as defined by the CLRA. Uber provides and receives payment for "services" as defined by the CLRA.

87. Uber violated and continues to violate the CLRA by engaging in the following unfair and deceptive business practices:

    a. Misrepresenting the source, sponsorship, approval, or certification of the LAX Airport Fee Toll.

    b. Misrepresenting an affiliation, connection, or association with LAX by charging and collecting an LAX Airport Fee Toll.

    c. Representing that transactions involving the LAX Airport Fee Toll confer or involve rights, remedies, or obligations which they do not have and are prohibited by law.

    d. Representing that the subject of transactions (namely, the LAX Airport Fee Toll) have been supplied in accordance with a previous representation when they have not.

e.    Inserting unconscionable provisions in contracts (charging the LAX Airport Fee Toll when no such legitimate fee existed).

88.    By reason of the foregoing, Mr. Brown and the class have been harmed, entitling them to injunctive relief, actual and punitive damages, disgorgement and restitution.

89.    On December 4, 2014, a CLRA notice letter was served on Uber which complies with California Civil Code § 1782(a). Mr. Brown sent Uber the letter via certified mail, return receipt requested, advising Uber that it is in violation of the CLRA and must correct and rectify its violation by reimbursing Mr. Brown and class members for all LAX Airport Fee payments. Uber did not respond to the CLRA notice letter within thirty days of receipt.

## **PRAYER**

WHEREFORE, Mr. Brown prays for judgment against Uber as follows:

A.    An order certifying this lawsuit as a class action;

B.    Compensatory damages in such amount as the Court deems just and proper;

C.    Statutory damages in such amount as the Court deems just and proper;

D.    Imposition of a constructive trust, an order for an accounting, and granting injunctive relief, or other such equitable relief, including restitution and an order for disgorgement of ill-gotten gains;

E.    Attorney fees;

F.    Costs of litigation;

G.    Prejudgment interest; and

H.    Such other relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Mr. Brown demands a trial by jury of all issues so triable.

DATED this 6th day of March, 2015.

          SCHNEIDER WALLACE COTTRELL
          KONECKY WOTKYNS LLP

          /s/ Jason H. Kim
          Todd M. Schneider
          Jason H. Kim
          180 Montgomery Street, Suite 2000
          San Francisco, CA 94104
          Telephone: (415) 421-7100
          Facsimile: (415) 421-7105
          tschneider@schneiderwallace.com
          jkim@schneiderwallace.com

          BAILEY & GLASSER LLP
          John Roddy
          Elizabeth Ryan
          125 Summer Street, Suite 1030
          Boston, MA 02110
          Telephone: (617) 439-6730
          Facsimile: (617) 951-3954
          jroddy@baileyglasser.com
          eryan@baileyglasser.com

          JAILE & TRIFILO LLC
          Pedro Jaile
          188 Summer Street
          East Boston, MA 02128
          Telephone: (617) 561-3777
          Facsimile: (617) 561-0300
          pjaile@jaileandtrifilo.com

          *Attorneys for Plaintiff*